**STATE OF WEST VIRGINIA**

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.B. and R.B.**

**No. 20-0837** (Harrison County 18-JA-133-3 and 18-JA-134-3)

## MEMORANDUM DECISION

Petitioner Mother M.N., by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's September 11, 2020, order terminating her parental rights to B.B. and R.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period, terminating her parental rights, and denying post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner and the father had been arrested on drug-related charges arising in the State of Louisiana. The DHHR alleged that petitioner would be extradited to the State of Louisiana, and no relative caregivers could be located in West Virginia. The DHHR further alleged that petitioner had exposed the children to unsafe conditions and had failed to adequately supervise the children. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In February of 2019, petitioner moved for a preadjudicatory improvement period, which the circuit court granted. The circuit court noted that petitioner tested negative for controlled substances on the day of the hearing and had agreed to remain substance free throughout the improvement period. The circuit court ordered that petitioner participate in parenting classes, random drug screenings, and a parental psychological evaluation as terms of her improvement period. The circuit court further ordered petitioner to maintain employment, to maintain a stable home, and permit the DHHR to visit her home, announced or unannounced. Notably, the DHHR returned physical custody of the children to petitioner in April of 2019, but retained legal custody pending these proceedings.

In May of 2019, the circuit court held a review hearing on petitioner's preadjudicatory improvement period. The circuit court noted "questionable 'substituted' urine drug screens on April 5, 2019, and April 15, 2019." Petitioner also "had an invalid urine drug screen on April 12, 2019," and, on April 19, 2019, an oral drug screen returned a positive result for amphetamines. Petitioner's drug screens had been negative for controlled substances since April 19, 2019, and were negative on the day of the review hearing. The circuit court also noted that the children attended the hearing with petitioner and were "very unkempt." The DHHR proposed a thirty-day extension with increased services, to which petitioner agreed, and the circuit court so ordered.

The circuit court held a second review hearing later in May of 2019. Petitioner did not appear but was represented by counsel. The DHHR proffered that, immediately following the prior review hearing, its workers conducted a home visit of the hotel room where petitioner and the children were staying. The workers characterized the room as filthy and observed beer in the refrigerator in the room. The workers ordered petitioner to clean the room. When the workers returned later that day, the room was still filthy and the children were still filthy, as observed by the circuit court at the earlier May of 2019 hearing. Petitioner was requested to submit to a drug screen the following day. On May 14, 2019, the Day Report Center ("DRC") that monitored petitioner's random drug screenings provided the DHHR video evidence "that clearly shows [petitioner] taking physical steps to adulterate her urine and oral drug screens." Later that day, the DHHR attempted to remove the children from petitioner's custody, but she could not be located. The DHHR believed petitioner was in Louisiana based on her social media posts since May 14, 2019. The DHHR also provided a DRC report that confirmed the urine petitioner was providing "was neither human nor mammal" and was determined to be synthetic urine. Based upon that evidence, the circuit court concluded that petitioner had not successfully completed the terms and conditions of her preadjudicatory improvement period and scheduled the proceeding for an adjudicatory hearing.

The DHHR filed an amended petition in August of 2019 alleging the circumstances surrounding petitioner's invalid drug screens and her failure to complete her preadjudicatory improvement period. The DHHR further alleged that petitioner was arrested in Louisiana in May of 2019 on the felony charge of child concealment. Later in August of 2019, petitioner stipulated that she submitted to fifteen random urine drug screens during the proceedings and that twelve of those samples were deemed "invalid, dilute, and/or substituted by the laboratory" and that the DRC surveillance video portrayed her adulterating her urine and oral drug screens. Petitioner further stipulated that she failed to complete the terms of her preadjudicatory improvement period and that her amphetamine use constituted neglect of the children. Based upon petitioner's stipulation, the

2

circuit court adjudicated B.B. and R.B as neglected children and petitioner as an abusing parent. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period. The circuit court set a hearing on petitioner's motion, which was later continued due to a motion for a competency evaluation related to her criminal charges. Petitioner was later determined to be competent to stand trial and criminally responsible for her actions.

The circuit court held the final dispositional hearing in June of 2020.[2] At the outset of the hearing, the circuit court recounted the procedural history of the case, which included petitioner's guilty plea for one count of concealment or removal of a minor child from a custodian in January of 2020. Petitioner was sentenced to an indeterminate one-to-five-year term of incarceration in May of 2020. In regard to petitioner's pending motion for a post-adjudicatory improvement period, the circuit court heard argument from counsel. In denying the motion, the circuit court considered that the children had been in foster care for nineteen of the prior twenty-two months. Further, the circuit court noted that petitioner may not be paroled upon her first eligibility and that she was also detained on drug-related charges stemming from Louisiana. The court found that to "grant either respondent an improvement period guts the statute that was enacted to ensure that children do not linger in foster care." Therefore, the circuit court denied petitioner's motion.

Turning towards disposition, the DHHR presented several exhibits related to petitioner's criminal proceeding, in addition to orders from the State of Louisiana terminating petitioner's parental rights to three older children. The DHHR also presented testimony of a Child Protective Services supervisor, a Child Protective Services worker, and the licensed psychologist that performed petitioner's competency and criminal responsibility evaluation. Upon this evidence, the circuit court found that petitioner had been incarcerated for a substantial period of time, so long that the children did not know her. Further, the court found that petitioner continued to be incarcerated and had pending charges in the State of Louisiana. The circuit court concluded that termination of petitioner's parental rights, rather than imposing long-term foster care, was in the children's best interests due to the speculative nature of petitioner's ability to parent in the future. Accordingly, the circuit court terminated petitioner's parental rights, finding that there was no reasonable likelihood that she could substantially correct the conditions of neglect or abuse in the near future and that termination of her parental rights was necessary for the welfare of the children. The circuit court also found that post-termination contact was not in the best interests of the children. The circuit court's decision was memorialized by its September 11, 2020, order. Petitioner now appeals this order.[3]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[2]The Court notes a substantial delay in the proceedings that was directly attributable to the COVID-19 pandemic and the resulting judicial emergency.

[3]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption, either in their current foster placement or by an intervening relative.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period without permitting her to present evidence in support of that motion. Petitioner acknowledges that, pursuant to West Virginia Code § 49-4-610(2), she was required to prove by clear and convincing evidence that she was "likely to fully participate in the improvement period" and was required to demonstrate that she experienced a "substantial change in circumstances" since her initial preadjudicatory improvement period. She believes that she could have met that burden given that she "participated well in her pre-adjudicatory [sic] improvement period except for the drug screening issues." We find petitioner is entitled to no relief.

We note that petitioner's assertion that the circuit court denied her motion without entertaining evidence is not supported by citation or the record as a whole. Under Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, petitioner's brief must "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignment of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs with arguments that . . . do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. As petitioner cannot show that this point was presented to the lower court or preserved for appeal, we decline to address it.

Reviewing the circuit court's ultimate ruling on petitioner's motion for a post-adjudicatory improvement period, we also find no error. It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Moreover, we agree with the circuit court that the length of time the children had been in foster care created a statutory limit on what improvement periods, if any, petitioner could be granted. Pursuant to West Virginia Code § 49-4-610(9),

no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing

evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

By the time of the dispositional hearing, the children had been in foster care for nineteen of the preceding twenty-two months and, therefore, further improvement periods were statutorily barred without a finding of "compelling circumstances . . . to extend the time limits." Clearly, no such circumstances existed in this case, where petitioner was incarcerated (and therefore was unable to fully participate in an improvement period) and would remain incarcerated for the foreseeable future. This Court has held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Thus, where petitioner's release and parental improvement were entirely speculative, we find the circuit court did not abuse its discretion in denying petitioner's motion for a post-adjudicatory improvement period.

Second, petitioner argues that the circuit court erred in terminating her parental rights because there was a reasonable likelihood that she could substantially correct the conditions of neglect or abuse in the near future and that termination of her parental rights was not necessary for the welfare of the children. Again, petitioner emphasizes her compliance in her preadjudicatory improvement period, while acknowledging that she "certainly made mistakes when she adulterated her drug screens and took the children out of state." Upon our review, we find petitioner is entitled to no relief.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is "necessary for the welfare of the child." West Virginia Code § 49-4-604(d) adds further guidance and provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "the abusing adult or adults have demonstrated an inadequate capacity to solve problems of abuse or neglect on their own or with help." This subsection also provides a nonexclusive list of circumstances where these conditions exist, including when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

*See* W. Va. Code § 49-4-604(d)(3).

5

Here, we find the circuit court's findings are supported by the record. It bears repeating that petitioner adulterated the results of her random drug screens so that she could continue to use controlled substances, even after she was granted temporary custody of her children. The children were observed to be "very unkempt" while in petitioner's care and the hotel room where the family was staying was "filthy." To say petitioner "participated well" in her preadjudicatory improvement period is a drastic mischaracterization of the record. More apt is petitioner's own admission that she failed to comply and failed to complete her preadjudicatory improvement period. Furthermore, petitioner's own actions caused her incarceration, which led to her lack of contact with the very young B.B. and R.B. Based upon petitioner's failure to follow through with a reasonable family case plan, we find no error in the circuit court's findings that there was no reasonable likelihood that she could substantially correct the conditions of neglect or abuse in the near future and that termination was necessary for the welfare of the children. Finally, we have consistently held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). To the extent that petitioner argues that a less-restrictive alternative was warranted, we find the circuit court's findings preclude those dispositional alternatives. The circuit court was within its discretion to terminate petitioner's parental rights, and we find no abuse of that discretion.

In her final assignment of error, petitioner argues that the circuit court erred in denying her post-termination visitation with the children. She asserts that, despite the children's young ages, she shared a bond with them. Notably, she provides no citation to the record in support of that assertion. In regard to post-termination visitation, this Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). As mentioned above, the circuit court found that petitioner was absent from the children's lives for such a period that they no longer knew petitioner. It reiterated that post-termination contact was not in the children's best interests because of the lack of bond. As we have noted, "[o]ur cases indicate that a close emotional bond

6

generally takes several years to develop," and the circuit court's finding further confirms that fact. *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Accordingly, we find no error in the circuit court's decision in this regard.

Lastly, because the proceedings regarding the permanent placement for these children are ongoing, this Court reminds the circuit court of its duty to establish permanency for this child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 11, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

7

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton